## ALEXANDER FULLER *vs.* THE BOSTON MUTUAL FIRE INSURANCE COMPANY.

Though a fire insurance company are authorized by their charter to insure property only to the amount of three fourths of its value, yet if they deliberately make a valuation of property, and insure three fourths only of the amount of such valuation, they are bound thereby, in the absence of fraud, collusion or misrepresentation, and cannot show, in an action against them to recover a loss, that the property was insured for more than three fourths of its value.

THIS was an action of assumpsit, in which the plaintiff declared on the two policies of insurance and the award hereinafter mentioned. The case was submitted to the court on the following facts agreed by the parties :

The defendants are a corporation established by *St.* 1838, *c.* 192, and are subject to the provisions of the Rev. Sts. *c.* 37, §§ 24 – 39, with authority to " insure, for a term not exceeding seven years, upon any building within this State, any amount not exceeding three fourths of the value thereof."

On the 8th of December 1838, Peter C. Jones was the owner of a paper mill and the water wheels attached thereto, situate in Watertown, and on that day the defendants executed

to said Jones, (who was then one of their directors,) the policy which is the subject of this action; whereby, in consideration of his paying a premium of $35, and of his premium note for the same sum, and of his binding himself to pay, in addition, such farther sum or sums as might be assessed on him by the defendants, pursuant to their by-laws, but not exceeding $140, they insured said Jones $2000 upon said paper mill and water wheels, for one year. The policy stated that said $2000 was " not more than three fourths of the value of said building and wheels, as appears by the proposal of said Jones, lodged with the secretary of this company ;" and said Jones, in his proposal for insurance, did state the estimated value of said mill and wheels, exclusive of the land, to be $3000. The policy was made on said estimate; a committee of said Insurance Com pany having previously visited and examined the mill and wheels, in company with said Jones.

Upon the face of the policy, and executed at the same time, was the following assignment to the plaintiff: " In case of loss, pay to Alexander Fuller, mortgagee. Peter C. Jones. Approved: Lemuel Blake, President." The plaintiff, at the time of said assignment, and at the time of the loss, was interested in said insured property, to the amount of $2500, as mortgagee.

The by-laws of said Insurance Company were printed on the sheet that contained the policy. By the seventh article of these by-laws, " the president shall examine alone, or jointly with the monthly or any other director, all the buildings or other property in the city of Boston, which may be proposed to be insured, and fix the sum to be taken thereon, and the rates of insurance."

On the 2d of May 1839, a loss of the insured property occured by fire, of which the defendants had due notice in writing ; and on the 11th of said May, the question of damages upon this policy, (and also upon another policy of $3300, upon the ma chinery, stock, &c. in said mill,) was submitted, by said Jones and the defendants, to referees, by a written agreement, by which the award of the referees was to be made in writing, and to be

final and binding on both parties. The referees gave notice to the parties, and on the 13th of said May, examined the premises, and returned their award in writing, as follows : " To the President of the Boston Mutual Fire Insurance Co : Sir : The undersigned, having viewed the premises at Watertown, owned by Peter C. Jones, lately destroyed by fire, and insured at your office, for the sum of $ 2000 on the building and water wheels, and $ 3300 on the machinery, &c. find that the fire was very destructive to the property, amounting to about a total loss of the whole insured ; and from the experience we have had in building and operating paper machinery, and the cost and actual value of such buildings to the owner, we think that the building could not have been worth less than $ 2800 to Mr. Jones, to operate the machinery in. Therefore we make an award, that Mr. Jones is entitled to the whole amount insured." A copy of this award was delivered to said Jones, by the defendants, at his request, immediately upon its being returned by the referees. As the defendants refused to abide by the award, the plaintiff commenced the present action, on the 9th of July 1839. The parties afterwards made a settlement of the policy upon the machinery and stock.

The judge who presided at the trial, at March term 1841, ruled that the award aforesaid was obligatory on the defendants, and that the estimate of the value of the insured property, in the proposal and policy, was conclusive, and must be taken to be the true value. Whereupon the case was taken from the jury, under an agreement, that if the whole court should determine that the award is binding on the defendants, in this action, *or* that the valuation in the policy is conclusive, then the plaintiff should have judgment ; otherwise, that the action should stand for trial.

*Goodrich & Barrett*, for the plaintiff.

*C. P. Curtis*, for the defendants.

SHAW, C. J. Assumpsit on a policy of insurance against fire, in which the plaintiff relies upon the original cause of action, and also on an award. The plaintiff sues, in effect, as assignee ; but as the assignment was made with the consent of the de-

fendants, and as a part of the original contract, and as it is found that the plaintiff was interested, as mortgagee, to the amount of the whole sum insured, we see no reason why he cannot maintain the action in his own name ; and his right so to do has not been contested on that ground.

Several questions have been argued ; one of them, and a principal one, is, whether the valuation of the property, as stated in the policy, under the circumstances, is to be deemed conclusive evidence of the actual value, for the purpose of adjusting the loss.

It is not contended that there was any designed or fraudulent over-valuation, or any collusive valuation, or any wilful mis representation of the value. The case arises upon a policy made by a mutual insurance company, that had no authority to insure over three fourths of the value of the buildings. In regard to all property lying out of the city of Boston, the mode taken to ascertain the value was this ; the assured made a statement in writing — in answer to certain standing questions, in compliance with the by-laws of the company — of the situation, circumstances, and value of the buildings proposed to be insured, which was filed and remained with the company. By the 7th article of the by-laws, it would be the duty of the president to visit and examine the buildings, alone or jointly with a direc tor, and fix the sum to be taken thereon, and the rates of insurance. As this company was established at Boston, it was to be expected that the greater proportion of risks would be taken in Boston ; and the by-laws were adapted to meet that expected state of things ; but they made no special provision for examining buildings out of the city. But this indicates the general policy of the company ; and in point of fact, it appears, in the present case, that a like examination was made by a committee of the directors, and for the like purpose.

In determining what amount shall be insured, the company necessarily determine the value of the building, or rather they fix a valuation, over which it shall not be rated, for the purpose of insurance. Being limited to insure not exceeding three fourths of the value, in determining the sum to be insured, they

18 *

by necessary consequence fix a valuation at such a sum, that the sum insured shall not exceed three fourths of it.   The result is, that as the valuation is thus proposed on the one side, and after the proposition is considered and modified, it is acceded to on the other, and the amount insured, and the rate of premium, assessment and liability, established on the same basis, it is, in the highest sense, a valuation by mutual agreement.

Then the question is, whether a valuation thus deliberately and carefully made by mutual agreement, as a part of the original negotiation — when each party is independent of the other, and at liberty to contract or not, as they are or are not respectively satisfied with the terms — shall, in the absence of all fraud, collusion and misrepresentation, be taken as the best evidence of the actual value of the premises insured.   [See *Borden* v. *Hingham Mutual Fire Ins. Co.* 18 Pick. 523.]

The same reason, which applies to other cases of contract, applies to this ; and the general rule is, that parties capable of contracting, and who enter into a contract, without fraud or imposition, are bound by law to abide by it.

One of the principal objections is, that the defendants are a corporation, and that a corporation can only act within the scope of the authority conferred upon them ; and that by their act of incorporation, this company can only insure three fourths of the value of the property ; and if they can show that a contract, in its terms proposes to bind them to a responsibility for a greater amount, they may show it in defence, and reduce the amount to that, for which alone they can make themselves liable.   This, as I understand it, is the strength of the argument.   But admitting its full force, we think it does not shake the position, that a valuation, fairly and deliberately made, is binding on them. The defendants were incorporated for the express and indeed for the sole purpose of insuring each other against loss by fire. Like all other trading or negotiating corporations, being invested with power to make a particular class of contracts, they are invested with all the incidental powers necessary to carry into effect the objects and purposes for which the corporation was created.   In giving them power to insure a certain proportion

of the value of buildings, the legislature necessarily clothed them with the power, at some time and in some mode, to determine such value, or to enter into suitable and proper arrangements for fixing it. Whether this shall be done by their own officers, or by referees mutually agreed on ; whether before or after the contract entered into ; is a question of expediency, not of power. If they had not power, in some mode, to fix the value, they never could make an adjustment which might not be overreached by a suit, in which the question of value must be submitted to a jury. Such valuation by the appraisement of indifferent men, or such adjustment after a loss, would always be open to the same objection as this valuation ; which is, that though the officers of the corporation have assented to the valuation, yet if it is an over-valuation, or if, in other words, it can be shown, to the satisfaction of a jury, to be an over-valuation, it is void as against the corporation. But we think the true answer is this ; that a valuation deliberately and honestly fixed by agreement, a valuation by which the premium and assessments to be paid by the assured are fixed, as well as the amount to be paid by the company in case of loss, is the best evidence of the actual value. Suppose a claim on a policy for a loss, and that the company might perhaps have successfully defended, on the ground that the loss was one for which they were not liable — as by fire caused by civil war, or insurrection — and the parties should agree to an adjustment by compromise or arbitration : Such adjustment would, we think, be binding ; and yet its binding force would be derived wholly from the agreement. It being once admitted that they are a body having the faculty to contract, we think it follows, that they have power, by their regular agents and officers, to make all such subsidiary and incidental contracts and agreements, both in making the principal contract, and afterwards in adjusting and executing it, as are necessary to accomplish the main purpose and object of their incorporation. Being of opinion, that the valuation, under the circumstances, was conclusive, it becomes unnecessary to consider the other branch of the case, or the effect of the award. The fact, that the present plaintiff was no party to the submis-

sion, would seem to be a formidable objection t. his recovering upon it ; but for the reason stated, we give no opinion on that point, and only make this remark, to show that we place no reliance on that award, in rendering

*Judgment for the plaintiff.*